## HENRY C. BONNEL *vs.* BERNARD DUNN.

1. An officer, having an execution or attachment in his hands, has a right to seize the goods of the debtor, and to hold them until an inventory and appraisement can be made according to law; and the officer will not be liable to an action of trespass for unlawfully taking goods exempt from seizure on civil process under the acts of 1851 and 1852, (*Nix. Dig.* 249, 251,) until he has time to make the inventory and appraisement.

2. If his family reside here, the goods of an absconding debtor are entitled to the exemption for the benefit of the family.

3. Although the goods of a debtor may be of less value than $200, it is not a trespass to seize them upon execution before they are appraised and selected according to the act.

4. In the absence of the defendant, or after his death, the head of the family may select the goods to be exempted.

In error to the Supreme Court.

*Little,* for plaintiff in error.

*Vanatta,* for defendant.

WHELPLEY, J.    Two questions are presented for decision in this case.

1. Was the defendant in error, at the time of the service of the attachment on his goods, a debtor having a family residing in this state.

2. Was the seizure of his goods under the writ a trespass.

"The matters proved in this case" appear by the certificate of the Court of Common Pleas of the county of Morris.    "They have returned the matters proved." From this it appears Dunn had a family, who had been for more than two years resident in the same house with Bonnel, the defendant in the court for the trial of small causes; that on the 4th March, 1858, Dunn's family had their goods and chattels removed to the depot of the railroad at Dover, in that county, which was near where they had lived, to be put upon the cars, and carried away— Dunn was not with his family; that three or four weeks before, Dunn had gone away, leaving his family in the house—to what place or how, it did not appear; Bonnel had procured, on his affidavit, that Dunn was an absconding debtor, and owed him a certain sum of money, an attachment to be issued in his favor against Dunn.    It was put into the hands of a constable to be executed, who went to the depot where Dunn's family was unloading the goods, and by virtue of the writ seized the goods, not worth over $50, and took them from Mrs. Dunn into his possession.    What became of the goods after this does not appear; no proof was made that they were sold by

the officer, or that they were not returned to the family by the officer.

For this taking the plaintiff below sued Bonnel, the plaintiff in the attachment, and recovered on these facts a judgment for the value of the goods, $45 damages and costs.

The object of this writ is to reverse the judgment of the Supreme Court affirming this judgment.

The determination of the first point stated involves the settlement of the true meaning of the first section of the act of March 14th, 1851, as explained by that of 13th February, 1852, (*Nix.* 249 and 251.) And in the next place, whether the case comes within the section in point of fact.

1. Are the benefits of that act confined to a debtor residing in this state, or do they extend to his family, if they reside here, although he may have absconded?

The benefits of the act are not extended to the goods of every debtor with or without a family, nor are the goods exempt if he have a family residing in another state, and move here. If the debtor reside in another state, and has a family residing here in the possession of the goods, they are exempt to the extent prescribed by the act. The words residing in this state qualify or relate to the family, not the debtor. The goods are exempt after his death, as well as before, showing that the exemption is not personal or in his favor, but for the benefit of his family, as well after as before his death.

The clause is confused and contradictory; it cannot be construed literally; we must seek for the idea sought to be expressed. A debtor can have no residence in this state or anywhere after his death, nor can he have a family residing here. It must mean that the goods, &c., in the possession of a family residing in this state are exempt from the payment of the debts of the head of the family, as well after as before his or her death, and not liable to be seized or taken by virtue of any civil process

whatever. That the debtor is not present at the appraisement to select the articles, will not stay the execution of the writ or prevent the family from having the benefit designed. To give effect to the obvious design of the act, the word defendant must be held to include not only the defendant, but the head of the family in his absence left in charge of the goods, and therefore clothed with the necessary power, by implied agency, to protect them from unlawful seizure.

This construction gives effect to every word of the section, and remedies the mischief that called for the law, that the families of debtors might not be broken up by creditors depriving them of all the comforts of life. If this be not so, property of a family *in transitu* from one house to another would be deprived of all protection.

Dunn could maintain an action if the case shows a trespass committed by the officer. In the absence of all proof of *mala fides* on the part of Bonnel, he can claim the same protection from the writ regularly issued as the officer, for all acts done in virtue of it authorized by law, in the execution of such process.

That the goods were shown, upon the trial, to have been worth less than fifty dollars, and of such a character as to be exempt, if selected, does not determine the officer's liability. The act does not require or permit him to judge of their value. He is not bound, in any case, to act at his peril on his own judgment; if he were, then his liability would depend sometimes on the difference between a valuation of $199 and $200. The only mode of settling the value is that prescribed by the act, the judgment of the appraiser.

Although the words of the first section of the act forbid in terms any seizure or taking by virtue of any civil process of such articles to the value of $200, it is clear that the legislature did not intend them so to be construed that the provisions of the next and succeeding sections could not be complied with. Nor can the particular goods

exempt from seizure be ascertained or known by the officer until fixed by subsequent appraisement and selection.

Where, therefore, the statute declares that goods and chattels of every kind, to the value of two hundred dollars, shall not be seized, it obviously means that any goods and chattels, to the value of two hundred dollars, *when ascertained and selected in conformity to the provisions of the succeeding sections,* shall not be seized or taken by virtue of any civil process. The first section declares the exemption of the property only when selected or appraised, if the value is found less than $200. The remaining sections prescribe the mode of ascertaining what particular goods shall not be seized.

When, therefore, the next section makes it the duty of the officers to have the goods so levied upon appraised after an inventory has been taken, it confers, by fair and necessary implication, the power to do what is necessary to perform the duty in the mode prescribed. If the goods are *in transitu,* he may stop them, and take them into his custody, to prevent their removal until the appraisement is made, as the act requires. By the command of his writ and the provisions of the second section, he must make a levy, and become subject to the consequences of that levy, the safe-keeping of the property, either for the benefit of the plaintiff or the family, according to the event of the appraisement. This responsibility must continue for five days, at least, unless the plaintiff is present, or waives notice of the appraisement.

After the appraisement, and the determination under it of the exemption of all or a part of the goods levied upon, the officer's power over them is gone. By virtue of his writ he can no longer seize, take, or hold them, or exercise any control over them ; by so doing, he becomes a trespasser—every holding of them against the family is a trespass, a tortious interference with their property. If the officer should sell them without an appraisement,

Bonnel v. Dunn.

such sale would be in contravention of the statute, and unauthorized, and subject him to an action of trespass or trover.

But I am unable to perceive how a seizure authorized by law, and commanded by his writ, can, by the mere nonfeasance of the officer, become a trespass.

This was ruled in *The Six Carpenters' case*, 8 *Coke* 290, the second resolution in which was, " that not doing cannot make the party who has authority or license by law a trespasser by relation. In *Waddel* v. *Cook*, 2 *Hill's N. Y. Rep.* 47, it is held that this rule applies to officers executing writs. *Smith* v. *Egginton*, 7 *Ad. & El.*, rules the exact point that, an officer having a defendant in custody for contempt is not liable in trespass for the neglect of a statutory duty required in the execution of the process. *Salmon* v. *Percival*, *Cro. Car.* 196, decides that an officer is not liable in trespass for refusing sufficient bail, and continuing imprisonment after tender of it.

If the original seizure was not a trespass, it has not been shown that the officer did any act which could make him a trespasser *ab initio*. If he sold after this suit was brought, as alleged in argument, that could not be proved upon the trial. An act done after suit brought could not be the ground of the action. If the officer was not liable when sued, he was not liable at all in the action.

The judgment of the Supreme Court and Court of Common Pleas must be reversed, and the record remitted according to law.

*For affirmance*—None.

*For reversal*—The CHANCELLOR, Judges VREDENBURGH, WHELPLEY, CLAWSON, COMBS, CORNELISON, RISLEY, SWAIN, and WOOD.